UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HAROLD WILLIAMS Mr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00213-MPB-MJD |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harold Williams filed this action under the Federal Tort Claims Act (FTCA), alleging he sustained injuries because of a faulty shower design in a federal prison. Defendant United States of America has moved for summary judgment. Dkt. [52]. For the reasons below, namely that the discretionary-function exception to liability under the FTCA applies to this case, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Williams failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Williams and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On May 14, 2021, Mr. Williams was confined in a non-handicapped accessible cell within the Special Housing Unit of USP – Terre Haute (USP SHU). Dkt. 52-4 at ¶ 4. There is no evidence that Mr. Williams would have been deemed "handicapped" on that date. Each of the non-

handicapped-accessible cells in the USP SHU have one individual shower stall made of stainless steel. Dkt. 52-3 ¶ 3. The shower stalls in these cells do not have a grab rail either inside or outside the stall, there is no slip-resistant mat or material in front of the stall, and the floor of the shower stands about 8-12 inches above the floor of the cell, which is made of concrete. Dkt. 52-10. On this date, Mr. Williams slipped and fell while getting out of the shower, breaking his left wrist when he reached out to try to break his fall. Dkt. 52-1 at 46-47.

USP was constructed in 2005, based on Technical Design Guidelines (TDG) approved by the Bureau of Prisons (BOP) in 2002. Dkt. 52-2 ¶ 7; Dkt. 52-3 ¶¶ 5, 6. In part, the TDG specified that the showers in the USP SHU must comply with ASTM or ASME standards for slip-resistant surfaces, grab bars, and floor drains. Dkt. 52-7 at 2-3. The reference to slip-resistant surfaces applies solely to the interior of the shower stall, not the floor outside of it. Dkt. 52-3 ¶ 13. There is no evidence that the USP SHU shower stalls failed to comply with American Society of Mechanical Engineers (ASME) or American Society for Testing and Materials (ASTM) standards.[1] Also, to be adequately anchored to the surface of the wall and ceiling, the shower stalls in USP SHU "must sit approximately 8 to 12 inches above the ground to accommodate the drain that rests between the surface of the concrete floor and the 'slip-resistant base' of the shower." *Id.* at ¶ 14.

In 2008, the TDG for USP were updated. Regarding the SHU showers, it states that "Accessible units shall have . . . grab bars and seat." Dkt. 52-8 at 3. There is no mention of such a

---

[1] Especially for standards that underly a variety of building and safety codes, the actual ASTM standards are difficult to obtain. The Court did review ASTM standard F 446, discussing grab bars in showers and referenced in the 2002 TDG, that was published in 1993 and seemed to be in effect in 2002. In part, it states that "a horizontal grab bar or bars shall be installed in the critical support area on either the service wall, back wall, or service wall" of any shower stall. But the standard also "exempts shower stalls with both interior dimensions of 34 in. (864 mm) or less." The shower stalls in the USP SHU measure 813 mm by 813 mm. Dkt. 52-8 at 3.

3

requirement for non-accessible cells. The TDG were updated again in 2011; the only difference applicable to USP SHU shower stalls was removing the previous requirement that they have an integral soap dish built into the stall. Dkt. 52-3 ¶ 16. Thus, except for the soap dish, the design of USP SHU shower stalls is still governed by the 2002 TDG. *Id.* at ¶ 17.

Different parts of the Federal Correctional Complex (FCC) at Terre Haute have different shower designs. For example, the Federal Correctional Institute's (FCI) general population units have group showers with drains installed directly into the floor because FCI is governed by different technical standards than USP. The FCC's Safety Administrator, Daniel Sharon, stated in a sworn declaration that the TDG for USP "reflect public policy considerations, including financial constraints, the inmate capacity needs of each facility, safety concerns, security concerns, and adherence to applicable specifications, codes, regulations, laws, and design performance criteria." *Id.* at ¶ 5. With respect to putting slip-resistant rubber mats outside of shower stalls, Mr. Sharon explained that they pose a variety of safety or security threats from inmates possibly weaponizing them, using them as armor, or covering windows into the cell. *Id.* at ¶ 25.

Also, Mr. Sharon participates in monthly inspections of the entirety of FCC Terre Haute. In April and May 2021, immediately before Mr. Williams was injured, the inspections failed to reveal any defects or concerns with the USP SHU shower stalls, or any deviation from the applicable TDG. *Id.* at ¶¶ 19-20.

Mr. Williams filed suit on May 31, 2022, under the FTCA, alleging his broken wrist resulted from Defendant's negligence. Dkt. 1. In his complaint and in discovery, Mr. Williams identified three areas in which he believes the USP SHU non-accessible shower stalls were defective: (1) by not having slip guards on the floor outside the stalls, dkt. 1 at 2; (2) the 8-12 inch height of the shower stall above the concrete floor, dkt. 52-15 at 8, 11; (3) the lack of any grab

4

bars or handrails in or outside of the stall, dkt. 52-15 at 11, dkt. 52-1 at 32-33. Defendant has moved for summary judgment.

### III.
### Discussion

The FTCA permits suits against the United States for personal injuries caused by the wrongful acts of federal employees acting within the scope of their employment under circumstances in which a private person would be liable to the plaintiff under the substantive law of the state where the acts took place. *See* 28 U.S.C. § 1346(b)(1). "Although the FTCA's waiver of sovereign immunity is broad, Congress has excepted certain claims from its purview, including '[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (quoting 28 U.S.C. § 2680(a)). "The purpose of this discretionary-function exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

To successfully assert the affirmative defense of the discretionary-function exception, Defendant must show two things. "First, the act at issue must be discretionary rather than mandatory, in that it involves an element of judgment or choice." *Lipsey v. United States*, 879 F.3d 249, 254 (7th Cir. 2018). In other words, if an employee's acts deviate from a course of action mandated by a federal statute, regulation, or policy, the acts are not discretionary, and the exception cannot apply. *Id.*; *see also United States v. Gaubert*, 499 U.S. 315, 322 (1991). "Second, in order to fall within the discretionary function exception, the government actions and decisions must be based on considerations of public policy." *Lipsey*, 879 F.3d at 254. On this element, "[t]he focus

5

of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. In other words, the United States need not show that a government employee actually balanced economic, social, and political concerns in reaching a decision, but simply whether the decision is susceptible to policy analysis. *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988). However, actions that are lazy, careless, or the result of inattentiveness are not "discretionary" for purposes of the FTCA. *See Keller v. United States*, 771 F.3d 1021, 1025 (7th Cir. 2014) (holding prison guards were not entitled to summary judgment on claim they failed to prevent attack on plaintiff by another inmate where there was evidence guards were lazy or inattentive in failing to adequately monitor prison grounds).

Here, 18 U.S.C. § 4042(a)(2) requires the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise . . . ." However, it does not provide further specification of what "suitable quarters" means.

Defendant concedes that construction of USP Terre Haute was governed by the Architectural Barriers Act (ABA) of 1968. The ABA provides in part,

> The Administrator of General Services, in consultation with the Secretary of Health and Human Services, shall prescribe standards for the design, construction, and alteration of buildings (other than residential structures subject to this chapter and buildings, structures, and facilities of the Department of Defense and of the United States Postal Service subject to this chapter) to insure whenever possible that physically handicapped persons will have ready access to, and use of, such buildings.

42 U.S.C. § 4152.

Defendant does not argue that the shower stall in Mr. Williams's cell was handicapped accessible. But, putting aside the question of whether Mr. Williams could rely in any way upon

6

the ABA, with there being no allegations that he was physically handicapped at the time of his injury,[2] there is nothing on the face of this statute that requires every shower in every federal prison to be accessible. Rather, it only requires "ready access to, and use of" the prison by physically handicapped persons. In other words, the ABA does not—standing alone—require "perfect accessibility" to all parts of a federal building for all purposes. *See Ellison v. United States Postal Service*, 84 F.4th 750, 757 (7th Cir. 2023). How to meet the requirement of "ready access" is something that is left to the discretion of government actors. There does not appear to be any other federal statutes, rules, or regulations that would have required the designers of USP Terre Haute to provide for certain features in any shower stalls. As such, Defendant has satisfied the first element of the discretionary-function exception to FTCA liability.

As to the second element, a number of courts have recognized that, generally speaking, design choices for government facilities and programs represent discretionary decisions that are exempt from FTCA liability. *See Ventimiglia v. United States*, 2009 WL 2982001, at *5 (N.D. Cal. Sept. 10, 2009) (citing, e.g., *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)); *see also Fothergill v. United States*, 566 F.3d 248, 253 (1st Cir. 2009) (holding discretionary-function exception applied to decision not to add certain safety measures to post office parking lot); *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 451 (5th Cir. 2012) (holding discretionary-function exception applied to Army Corps of Engineers' decision to, among other things, delay "armoring" part of levee and canal system that failed during Hurricane Katrina, even if earlier armoring would have been "optimal" and precise reasons for the delay were partially unknown); *Alberty v. United States*, 54 F.4th 571, 577 (8th Cir. 2022) (discretionary-function exception applied to design of

---

[2] Not only is there no evidence Mr. Williams was handicapped, the ABA also does not allow private causes of action against the United States for alleged violations of it. *See Crowder v. True*, 1998 WL 42318 at *2 (N.D. Ill. Jan. 29, 1998) ("There is no private right of action by handicapped individuals complaining of a violation of the ABA; enforcement is purely administrative")).

walkway attached to federal building). Labeling something a "design choice" does not automatically invoke the discretionary-function exception—for example, if a plaintiff presents some contrary evidence that an alleged safety hazard could have been remedied by "a simple, essentially no-cost safety fix . . . ." *See Ventimiglia*, 2009 WL 2982001, at *6-7.

But it is especially the case that the BOP must necessarily enjoy a broad range of discretion when it comes to designs of federal prison facilities and policies. *See Calderon v. United States*, 123 F.3d 947, 950-51 (7th Cir. 1997); *cf. Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (holding that since problems that arise on the day to day basis of correctional facilities involve many complex issues, prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security). "Although the BOP owes a general duty of care to safeguard its prisoners, to make personal hygiene supplies available to them, and to provide them with an opportunity to shower regularly, the BOP 'retains considerable discretion to determine the means by which it will fulfill these duties.'" *Lopez v. United States*, 2020 WL 1492804, at *4 (M.D. Fla. Mar. 27, 2020) (quoting *Dugan v. Warden, FCC Coleman, USP I*, 673 F. App'x 940, 942 n.4 (11th Cir. 2016)) (cleaned up).

Here, as recited in Part II of this Order, there is clear evidence that the design of USP Terre Haute overall, and in particular where and what type of shower facilities would be available to inmates in different parts of the prison, were the result of the balancing of a variety of policy interests and considerations. There is no evidence of "laziness" in the shower designs, nor that there was a "simple, essentially no-cost fix" to make the showers safer that would have been consistent with other safety and security concerns within a prison. There is no evidence that the showers in fact were installed contrary to the TDG for USP Terre Haute. To the contrary,

inspections of the showers immediately before Mr. Williams's fall indicated that they were consistent with the TDG. In sum, even if the Court were to assume that the shower stalls in the USP SHU could have been better designed, or even that they were negligently designed, the undisputed evidence demonstrates as a matter of law that the discretionary-function exception to the FTCA applies in this case. *See Lopez*, 2020 WL 1492804, at *4 (holding discretionary-function exception applied to BOP as to claims regarding temperature control of showers in prison); *see also Adams v. United States*, 668 F. Supp. 3d 468, 477 (S.D. W. Va. 2023) (holding discretionary-function exception applied to BOP as to claims regarding maintenance of sidewalk outside prison).

### IV.
### Conclusion

Defendant's motion for summary judgment, dkt. [52], is GRANTED. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: February 14, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

HAROLD WILLIAMS
16009-026
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

9